Lee *v.* Gardiner.

ANN LEE *v.* WILLIAM GARDINER, use, &c.

An action for debt lies wherever the demand is for a sum certain, or capable of being readily reduced to a certainty; consequently it lies upon a judgment, where that is the foundation of the action, and the matter sought to be enforced.

And it is held by the highest authorities, that in actions of debt on judgments for *devastavit* at common law, the foundation of the action is the judgment obtained against the administrator.

In this State as in England, an administrator is liable for a *devastavit*, upon proof of assets received and wasted by him.

In case of the death of the usee in any suit before final judgment, the statute (Hutch. Co. 842) provides that " it shall be lawful for the party representing such deceased person as executor or administrator, to be entered on the record and papers in the place of such deceased person." By strict legal rules the usee is not a party to an action, and is only treated as such in virtue, and to the extent of the provisions of the statute. *Held*, that the statute does not declare that upon the death of the usee a suit shall abate,

44 *

but merely makes it lawful for the administrator to be entered of record in the place of the deceased.

The name of the usee in a suit may be struck out, on motion. 4 S. & M. 352, cited and confirmed.

It was competent for D. in his lifetime to assign to B. the beneficial interest in the suit, not to make him a party to it, but to entitle him to the proceeds of the suit; and this would entitle B. to the benefit of the judgment as an equitable assignee, and as such would justify the institution of the suit in the name of the legal plaintiff for B.'s use.

Though the assignment of the judgment were invalid, the suit could be maintained in the name of the legal plaintiff. 6 S. & M., cited and confirmed.

Lands are subject to administration for the payment of debts as of the assets of the deceased at the time of his death, and it is the duty of the administrator in case of deficiency of personalty, to sell them for that purpose under the order of the probate court. *Held*, that the proceeds of the sale of lands in such cases, are administered in the same manner as the avails of personalty.

A judgment such as rendered, binds the estate and not the administrator individually. 4 S. & M. 113, cited and confirmed.

This is an action of debt on a judgment, which is not barred by the statute of limitations until after the lapse of seven years.

Where the declaration states the amount of assets, and it appears to be sufficient to pay the plaintiff's claim, and the defendant demurs to the declaration, this is held, in an action of *devastavit*, to dispense with proof of the amount of assets; and is sufficient to support a judgment. *Hoggath* v. *Montgomery*, 6 How. 93, cited and confirmed.

The heirs of the deceased having ratified and acquiesced in the sale, and received their portion of the proceeds; they are estopped from denying the validity of the sale.

In error from the circuit court of Jefferson county; Hon. Stanhope Posey, judge.

In April, 1836, Christopher Dart and William Gardiner, as merchants and copartners, trading under the name of Dart & Co., for the use of Christopher Dart, sued Charles S. Lee, in the Claiborne circuit court. Lee appeared, and pleaded to the suit. In December, 1836, Lee's death was suggested. In July, 1837, *scire facias* issued, and was served on Ann Lee, as administratrix of Charles S. Lee, deceased. . In November, 1837, Ann Lee, as administratrix of Charles S. Lee, deceased, appeared to the *scire facias*, and pleaded the general issue *de novo*.

In December, 1838, the cause came on for trial, and the

plaintiff obtained judgment against Ann Lee, as administratrix, for $6,080.90. A new trial was granted. In June, 1840, the cause came to trial a second time, and the plaintiff obtained judgment for $5,985. Another new trial was granted, and the cause came on to be tried a third time, on the 9th December, 1840, which resulted in a third verdict in favor of the plaintiff, for the sum of $6,988.05, and costs taxed at $85.93. When the cause was called for trial the third time, the death of Christopher Dart was suggested. The judgment of the court upon the verdict of the jury is in the following language, to wit: " Therefore it is considered by the court, that the plaintiff, as survivor of Christopher Dart, deceased, (and for the use and benefit aforesaid,) recover of the defendant Ann Lee, administratrix of Charles S. Lee, deceased, the amount by the jury above found, and costs of suit, and may have execution."

Upon this judgment execution issued 21st December, 1840, against the goods and chattels of Charles S. Lee, deceased, in the hands of Ann Lee, his administratrix, to be administered, which was returned " no property found."

Upon the foregoing judgment suit was instituted in the Jefferson circuit court, to October term, 1848, in the name of William Gardiner, surviving partner of Christopher Dart, for the use of J. B. Thrasher, assignee of Christopher Dart, in his lifetime, suggesting a *devastavit*, to wit, an action of debt. A demurrer was sustained to the declaration for technical causes, and leave given to amend.

A new declaration was filed 5th May, 1849, containing three counts ; the first count sets out the commencement of the original suit against Lee in his lifetime, in April, 1836; the death of Lee; *scire facias* to revive, and revival, and plea by Ann Lee, as administratrix of Charles S. Lee, deceased, at November term, 1837, and various continuances up to December, 1840; death of Dart suggested, and judgment 9th December, 1840, against Ann Lee, as administratrix, in favor of said Gardiner, as surviving partner of Dart, for the use and benefit aforesaid, for $6,988.05, and costs $85.93, execution on said judgment and the return of the sheriff, that said defendant had neither goods nor chattels within his county. The first count contains

an averment, that whilst said suit was pending against said Ann, as administratrix, in 1839, that said Ann, as administratrix, had of the goods, chattels, credits, and sums of money which were of said Charles S. Lee, at the time of his death, in her hands, to be administered, to the value of the damages and costs aforesaid, in form aforesaid recovered, to wit, $17,604, wherewith she might have paid and satisfied said plaintiff, but failed and refused to do so. That she distributed $13,395 to the heirs, whereby she wasted and misapplied the same, and thereby committed a *devastavit*, by means whereby an action accrued.

The second count sets out the recovery of said judgment, on the 9th of December, 1840, in favor of said Gardiner, as surviving partner of Christopher Dart, against Ann Lee, as administratrix of Charles S. Lee, deceased, for $6,988.05 damages, which he had sustained by reason of the non-performance of certain promises and undertakings, to said plaintiff, and the said Christopher Dart, in the lifetime of said Charles S. Lee, before that time made, and his costs amounting to $85.93, and that said plaintiff have execution to be levied, &c.

It is averred in this count, that during the pendency of said suit, and after the said Ann Lee, as administratrix, had been served with process of *scire facias*, and had appeared and plead to said suit, that goods, chattels, credits, and sums of money, which were of the said Charles S. Lee, deceased, in his lifetime, and at the time of his death came into the hands and possession of the said Ann Lee, as administratrix as aforesaid, to be administered to the value of the damages and costs aforesaid in said judgment mentioned, together with all interest due thereon, with which the said Ann Lee ought to have paid and satisfied the same ; but that the said Ann wasted, eloigned, and misapplied the same, by means whereof an action accrued.

The third count sets out the judgment of 9th December, 1840, as recovered by Gardiner, surviving partner, &c., averring that during the pendency of said suit, and after issue joined, to wit, 1st December, 1839, that goods, chattels, credits, and sums of money of Charles S. Lee, deceased, to the amount of $17,604, came into the hands of said Ann, as administratrix, which were

more than sufficient to pay said judgment, after paying all other debts, &c.; but that said Ann wasted, eloigned, and misapplied the same, by means whereof an action accrued.

To the amended declaration Ann Lee demurred generally. On joinder and argument the court overruled the demurrer. On affidavit of merits, the defendant Ann was allowed to plead, whereupon she filed eight separate pleas, to wit: —

1. *Nil debit*, that she did not owe the debt concluding to the country, upon which issue was joined.

2. Not guilty of the grievances, with conclusion to the country, upon which issue was joined.

3. *Plene administravit*, that before the commencement of the suit, she fully administered all the goods that came to her hands, and had at no time since had any goods. Replication traversing the plea and issue to the country.

4. Special plea of *plene administravit*, namely, " that no money or credits came to her hands to be administered, and that all the goods and chattels of said Lee that came to her hands, were sold by the order of the probate court, and the moneys were duly paid over to creditors, and that no part thereof was wasted."

5. Statute of limitation, "that said several causes of action did not accrue within three years next before the commencement of the suit." To this plea the plaintiff demurred, and the demurrer was sustained by the court.

6. Plea, that at the May term, 1839, of the probate court, she settled her final account of all her actings and doings, which was allowed by said court, and that there was due to her a balance of $822.68. To which plea plaintiff demurred, and the demurrer was sustained by the court.

7. Statute of limitation, " that more than four years had elapsed after defendant's qualification as administratrix, and after the several causes of action accrued, and that no proceedings had been commenced on said judgment within four years next before the commencement of the suit." To which plea the plaintiff demurred, and the demurrer was sustained by the court.

8. Plea, *Nul tiel record*, and issue to the court, and judgment for the plaintiff.

To the fourth special plea of *plene administravit*, the plaintiff filed a special replication, setting out as follows, to wit: Because, &c., " he says that at the June term, 1838, of the probate court of said county, said defendant, as administratrix of said Lee, deceased, did exhibit on oath an account of the personal estate and debts of said Lee, deceased, showing said personal estate insufficient to pay the debts, and did petition said court of probate for an order directing citation to issue to all persons interested in the estate of said deceased, to appear, and there show cause why an order should not be made to sell certain real estate of said deceased, in said petition mentioned, for the payment of debts, and that such proceedings were had; that at the September term, 1838, of said probate court, it was ordered that the administratrix have leave to sell the real estate in said petition mentioned, on a credit of one, two, and three years, subject to dower; and the said plaintiff says that said defendant, as administratrix, in pursuance of said order, did, on the 2d November, 1838, sell the said real estate for $20,092.50, which sum, on the 29th day of November, 1841, came to the hands of the said defendant as administratrix, to be administered and applied to the payment of the debts of said Lee, deceased; and said plaintiff further says, that the said defendant, administratrix as aforesaid, did not apply the said sum of money, or any part thereof, to the payment of the debts of said Lee, deceased, and did not apply the same, or any part, to the payment of the said debt in the declaration mentioned, which remains unpaid, but that defendant wasted and eloigned the same. To this replication defendant filed a general demurrer, which was overruled by the court, and the defendant rejoined, traversing said replication, and concluded to the country. Whereupon the cause came on to be tried 19th October, 1849, before a jury, who found for plaintiff $7,073.98 debt, and $4,952.70 damages, aggregate $12,026.68.

The probate record contains the grant of administration to Ann Lee, on the estate of Charles S. Lee, deceased, 24th July, 1837. Appointment of appraisers, July, 1837. Inventory returned into court, August, 1837. Order of sale of personal estate, January, 1838. Account of sales returned $1,542.87,

and a report, on oath, made by administratrix, showing the personal estate insufficient to pay the debts, by a deficit of $2,979.38.

Administratrix's petition to the court to sell certain real estate described in petition, to wit: 1140 acres of land, petition sworn to by administratrix.

September, 1838, land ordered to be sold on one, two, and three years' credit.

June, 1839, Ann Lee settled her final account of administration, and the amount was sworn to in this account. · She debits the estate with cash paid A. G. Bowen per heirs, $13,395, and credits the same with heirs' portion of real estate, $13,395. Land sold 29th November, 1838, for $20,092.50, out of which she takes $6,697.50, as one of the heirs, and only accounts for $13,395, other two thirds, paid the other heirs.

" Received, Rodney, November 30th, 1838, of Mrs. Ann Lee, administratrix of the estate of Charles S. Lee, deceased, $13,395, in full for all claims of myself and Margaret T. Bowen, late Margaret T. Lee, my wife, and one of the legal heirs of Lydia Ann Lee, deceased, of whose estate I am curator, against the estate of said Charles S. Lee, deceased, for money, the proceeds of ·lands sold, or lands and real estate, or lands belonging to said estate, in the State of Mississippi, or against the said Ann Lee, administratrix as aforesaid, on account of the real estate of Charles S. Lee, deceased."

Ann Lee prayed this writ of error.

*D. Mayes*, for appellant.

No judgment could be entered on the finding of the jury, and it should have been set aside, and a *venire facias de novo* awarded. The verdict is : " We of the jury find for the plaintiff the sum of seven thousand and seventy-three dollars and ninety-eight cents for his debt, and assess his damages for the detention of the same at the sum of four thousand nine hundred and fifty-two dollars and seventy cents." By statute, Hutch. Code, 657, § 57, " no executor or administrator, or surety for any executor or administrator, shall be chargeable beyond the assets of the testator or intestate, by reason of any

omission or mistake in pleading, or false pleading of such executor or administrator." *Robinson* v. *Lane*, 14 S. & M. 161. It follows that, unless the jury find the amount of assets, a judgment cannot be entered, the extent of the liability of the administratrix not being ascertained. *Ely* v. *Commonwealth*, 3 Dana, 137; *Sigler* v. *Haywood*, 8 Wheat. R. 679; *Marr* v. *Ricker*, 1 Humph. R. 348; *Jarett* v. *Wilson*, 1 Ark. R. (Pike) 137; *Booth's Executors* v. *Armstrong*, 2 Wash. R. (Va.) 310; *Fairfax* v. *Fairfax*, 5 Cranch, 19; *Brisendine* v. *Tisdale*, 5 Leigh, 51; *King* v. *Anthony*, 2 Blackf. R. 131; *Nixon* v. *Bullock*, 9 Yerg. R. 415; *Buckner* v. *Morris*, 2 J. J. Marsh. R. 121; *McKinley* v. *McCall*, 1 Monr. R. 54; *Buckaloo* v. *Emerick*, 18 Ohio R. 268; *Gorton* v. *Hiatt*, 5 Blackf. R. 44; *Shannon* v. *Dinkins*, 2 Strobh. R. 196; 2 Williams, Executors, 1410, 1411, and n. 1400, 1401.

An action of debt for *devastavit* cannot be maintained in Mississippi. This is manifest when we reflect on its nature and origin. It is a common law action, and its application is not extended by statute beyond the cases in which it might be maintained at common law. What, then, was its origin, and under what circumstances, and for what reason, might it be maintained?

As to its origin, it was introduced as a substitute for and in lieu of the *scire fieri* inquiry.

It might be maintained in cases where the party might have proceeded to charge the executors or administrators *de bonis propriis* by the *scire fieri* inquiry, and in no other case. And the reason he might proceed by action of debt was, that the judgment *de bonis testatoris* or *intestati* was conclusive that he had assets, and the liability on his part was reduced to a certainty by the record.

In a case like the present, there could be no *scire fieri* inquiry, and consequently no action of debt for *devastavit*.

At the common law, the first judgment being obtained, and a *fi. fa.* issued, to be levied of the goods, &c. of the deceased, the sheriff might return a *devastavit* on the *fi. fa.*, whereupon the plaintiff might, without any further proceeding, sue out his *fi. fa.* against the executor or administrator, to be levied *de bonis propriis*.

But if the sheriff returned generally *nulla bona*, the plaintiff was driven to his *scire fieri* inquiry.   Upon taking the inquisition, the executor or administrator might prove that he had pointed out goods to the sheriff subject to the execution, and that he failed or refused to levy.   This was the only defence allowed.   The judgment proved that he had the assets, and he was estopped to deny it, and if he did not produce assets, the debt was his own.

Now, the judgment in this case, so far from being conclusive evidence, is no evidence of assets.

If the action of debt suggesting a *devastavit* had not taken the place of the *scire fieri* inquiry, could the sheriff here have returned a *devastavit*, upon which the plaintiff might have sued out his execution against Ann Lee, *de bonis propriis?*   By no means; for there is no evidence, conclusive or otherwise, of assets.

Could he have proceeded to obtain his execution *de bonis propriis* by the *scire fieri* inquiry?   Not at all; for the only fact ascertained by that proceeding would have been that the administratrix had not shown goods, &c., to the sheriff, on which to levy; but it would remain wholly unknown, judicially, that there ever had been goods, &c.

As the action of debt, then, is but a substitute for the *scire fieri* inquiry, it follows that it cannot be maintained.   But if the action of debt for *devastavit* could be maintained in Mississippi, it cannot be in this case; for here the record shows, that if there was a wasting, it was of land, and not of goods and chattels.

The foregoing shows that the common law only gave the action because something had been wasted, or ought to have been produced, on which the sheriff might have levied a *fi. fa.* The judgment (if Mississippi had no statute on the subject) could not have shown that the deceased left lands which might be applied to the payment of debts, could the sheriff have returned a *devastavit*, because lands had been wasted, or could not be found.   Yet it was only where the sheriff might have returned a *devastavit*, that the action of debt for *devastavit* lies.

Had the sheriff returned *nulla bona*, and the *scire fieri* in-

quiry adopted, could Ann Lee have defended, by showing that she had pointed out the lands to the sheriff, and he had not levied? The land was not subject to the judgment *de bonis intestati*, and consequently the whole proceeding would be inapplicable to the case. The first judgment ascertained nothing with respect to land. The execution in the sheriff's hands could not reach land; and it is only where it is ascertained that assets which by law the judgment extended to have been wasted, that debt on such judgment suggesting a *devastavit* may be maintained. This case comes within the reason that protects the administratrix from debt suggesting *devastavit*, where the judgment was against her intestate. It does not show assets charged by the judgment, namely, it does not show or raise a presumption of any assets out of which the debt could have been levied, and they proceed for land, out of which the debt could not have been levied.

The statute of limitations bars the action. By 4th section of act of 1844, Hutch. Codé, 830, it is provided that all actions of debt, founded on any contract not under seal, shall be barred in three years. The 14th section provides that the passage of that act shall not stop the limitation contained in any other act, when the same may have commenced before the passage of that of 1841. The act of 1822 limited the action of debt founded on any contract, without specialty, to six years. Hutch. Code, 825. And this was reduced to three years by act of 1827. Hutch. Code, 828. This being debt upon contract, "not under seal," the statute expressly embraces it, and is a conclusive bar. *McLuney* v. *Silliman*, 3 Pet. R. 278; *Griffin* v. *Heaton*, 2 Bailey, R. 58; *Thorpe* v. *Corwin*, 1 Spencer, R. 311; Angell, Lim. 162.

The replication is a departure from the declaration. The latter is for a *devastavit* of the "goods and chattels, effects, and sums of moneys which were of Charles S. Lee, in his lifetime." And the replication is of lands, or the proceeds of lands sold as administratrix, by order of the orphans' court. Steph. Pleading, 440; 1 Chit. Pl. 557, and authorities there cited; *Wilkinson* v. *Allen*, 11 Ala. 128; *Pease* v. *McKusick*, 25 Maine (12 Shep.) 73.

The defendant should have been permitted to defend, on the ground that her sale of the land was void.   If void, it passed no title to the land ; the money, if she received it, was received to the use of the vendees, and was not assets, and the creditor's remedy was against the heirs.   *Ashurst* v. *Ashurst*, 13 Ala. R. 781.

Whether a sale is or is not voidable, would be matter only between the heirs and purchaser; but if void, it is of no effect for any purpose.   To say it has any effect, is to say it is not void.

*Wilcox* and *Clark* on the same side.

*John B. Coleman* for the appellee.

Under her general demurrer to the declaration, the plaintiff in error advances two propositions, to wit : —

1. That the action of debt upon a judgment against an administrator, suggesting a *devastavit*, will not lie in this State.

2. That the judgment on which this suit is founded, is void, because rendered after the death of Dart, the usee, without having kin, revived in the name of his legal representative.

That this action will lie in England, and is the appropriate mode of fixing the liability of an administrator for a *devastavit*, cannot be controverted.   *Wheatly* v. *Lane*, 1 Saund. R. 219, note 8.

It is, however, contended, that the English doctrine is inapplicable here, for the reason, that in England such judgment is a confession of assets, while in this State it does not raise even a presumption of assets ; and that in England, the action is sustained solely upon the ground that the judgment is conclusive evidence of assets.

We dissent *in toto* from this proposition.   The judgment is admitted to be the foundation of the action.   It is termed an action of debt upon a judgment, and is governed by the rules that regulate that particular form of action.   A judgment against the administrator is indispensable to its maintenance. This is required in order that the plaintiff may show conclusively that he has a valid unsatisfied demand against the intes-

tate, and that he has a right to its satisfaction out of the assets of the estate. This is the basis upon which rests his claim to a recovery. The judgment is the legal evidence of that claim, and the only evidence which the law recognizes. It is, therefore, the first link in the plaintiff's chain of proof. But in order to make the administrator individually liable, he must go further; he must show that he has received assets, and that he has wasted them. He must make proof of this, and neither reason nor authority restrict him to record evidence. The fact to be established; to wit, the reception and wasting of assets, is matter *in pais*, and may be proved like any other matter *in pais*. In England it is proved by the admission of the administrator, evidenced by the judgment against him, which the law then makes an admission or confession of assets. In this State, no such constructive confession attaches to the judgment, and the receipt and wasting of assets must be proved like any other fact. It is, then, a mere difference in the rule of proof. In England, the judgment is received as constructive evidence of what in this State must be directly and affirmatively established.

That this action is not sustained in England, upon the ground that the judgment is a confession of assets, is demonstrable. It lies there upon a judgment of "assets *quando acciderint.*" *Noel et al.* v. *Nelson*, 3 Saund. 219, a. note 2; *Buller's Nisi Prius*, 169; 6 Term R. 1.

Now a judgment of "assets *quando acciderint,*" is not only not evidence of assets, but it is conclusive evidence that the administrator has no assets in his hands. It is the judgment of the court that he has no assets, and it can only be levied of assets that subsequently come into his hands. And in an action of debt on such a judgment, suggesting a *devastavit*, the plaintiff is confined to proof of the reception of assets by the administrator, subsequent to the date of the judgment.

This question has also been adjudicated upon, and we think directly settled, by this court. *Vick* v. *House*, 2 How. 617; *Howard* v. *Cousins*, 7 How. 114. And the same principles for which we contend, are recognized in 2 Porter, 236; 2 Wash. R. 184; 1 Johns. C. 276; 1 Blackf. 344; 4 Munf. 466; 6 Mass. 392; 3 East, 2, 6, 7.

It is objected by the counsel of plaintiff in error, that this action was improperly brought in the *debet* and *detinet*. To this we reply, that the books read the other way.   2 East, 2 ; 2 Chitty's Pl. 484, note a.; 1 Saund. R. 219, E.; 1 Harris' · Entries, 461.

It is next contended, that the original judgment is void, because rendered after the death of Dart the usee without revival.

On the death of a usee, the statute gives his representatives the privilege of coming in and being made parties, but it nowhere makes it necessary for them to do so.    Hutch. Code, 842.  ·

A usee is not a necessary party to a suit; the suit can be as well maintained without his name appearing in the record, as with it.    The legal title is in the nominal plaintiff, and the usee is at liberty to insert his own name or not, as he pleases.    Upon his death, a similar privilege is extended to his representatives; but their failure to avail themselves of it can have no effect on the suit.    The name of the usee may be stricken out on motion. *Archer* v. *Stamps*, 4 S. & M. 352.

But at most, the judgment was only erroneous; it clearly was not void.    The subject-matter and the parties were within the jurisdiction of the court.

" A judgment is only void, when the court has not jurisdiction of the subject-matter or the parties." *Boon* v. *Poindexter*, 12 S. & M. 647.    This judgment, then, if erroneous, is valid until reversed.

It is insisted by counsel of plaintiff in error, that this action is founded on a tort, on the *devastavit*, and cannot be maintained for the use of another.

It is an action of debt, founded on a judgment.    Both in form and in substance, it is an action *ex contractu*, and neither its nature nor character can be changed by the species of proof that is required to sustain it.    2 Saund. Pl. & Ev. 505 ; 1 Ib. R. 219 ; 2 Lord Raymond, 971.

The equitable interest in a judgment is assignable, and suit may be maintained upon it, for the use of the assignee.    2 S. & M. 250 ; 6 Ib. 440 ; 7 How. 216 ;  5 Stew. 247.

If suit cannot be maintained for the use of another, the allegation of the use is surplusage, and may be disregarded.

*Hundley* v. *Buckner*, 6 S. & M. 70. It is at most only a technical and formal defect, the demurrer being general, does not reach it.

We come now to the different points arising upon the subsequent pleadings.

It is contended by the counsel of plaintiff in error, that their demurrer to the replication to the fourth plea should have been sustained, on the ground that the replication was a departure from the declaration.

We reply, 1. That the plea was bad, and the demurrer might have been carried back to it, and sustained. The plea admits the reception of assets, and their payment to creditors. Our judgment was entitled to a ratable proportion of those assets, and their appropriation to a particular set of creditors was a *devastavit.* The plea, then, was no answer to the declaration; it was no avoidance of the charge in the declaration. 7 How. 126; 6 S. & M. 239.

2. The replication was not a departure. The declaration alleges generally, that sums of money, &c., came to the hands of the administratrix. The replication specifies the sources from which these moneys were derived. There is no abandonment of the antecedent ground of complaint. Gould, Pl. 453.

3. The replication is good as a novel assignment. The plea was an evasive one, endeavoring to raise an issue on an immaterial point, to wit, the time when the assets were received by the administratrix. Gould, Pl. 366, n. 14, 457.

4. The distinction contended for between legal and equitable assets, does not exist in this State. Lands, by our statute, are chargeable with the payment of debts. Hutch. Code, 624.

There is no need for the interposition of a court of equity. The probate court has full jurisdiction to order a sale of lands for the payment of debts, and the proceeds are required to be distributed ratably. The administratrix is chargeable as such with the proceeds of the sale of land, to the same extent that she is chargeable with the proceeds of the sale of personalty, and is equally accountable in both cases to the probate court. Hutch. Code, 666, 667.

But the administratrix has admitted these assets in her final account with the probate court. She is, therefore, concluded from denying their reception. *Singleton* v. *Garrett*, 1 Cush. 198.

It is insisted by counsel, that the demurrer to the 5th plea, setting up the statute of limitation of three years, was improperly overruled.

This, as we have shown, is an action of debt on judgment; the judgment is the foundation of the action, not the *devastavit.* 2 Saund. Pl. & Ev. 505; 1 Saund. R. 219.

The bar of the action of debt on judgment is seven years. Hutch. Code, 830, § 8.

The judgment originally rendered against the administrator, in his official capacity, becomes, by his misappropriation or wasting the assets in his hands, a judgment against him individually. The statute of three years has no application to debt on judgment; and the demurrer was properly sustained.

The 6th plea, setting up a final settlement in the probate court, is clearly bad. 12 S. & M. 439; 1 Cushm. 232.

The 7th plea is the statute of limitation of four years. The bar of four years is confined to actions against administrators, on judgments against their intestates. Hutch. Code, 831, § 12. This plea was therefore also bad.

Exceptions were taken to the admission of certain evidence introduced by the plaintiff: —

1. To the transcript of the judgment declared upon.

No ground of exception is stated. It cannot, therefore, be noticed by this court. 1 S. & M. 730; 4 Ib. 113; 3 How. 205; 4 Ib. 90. The transcript is besides regular in every particular.

2. To the admission of the transcript from the probate court.

No ground of exception is stated; but it is understood to be, that the record does not purport to be a full transcript of the entire administration of the estate of Charles S. Lee. There was no necessity for our producing a full record. The transcript contains all that was pertinent to the issue, and this was all that was required.

3. To the admission of the transcript of the deed from Mrs. Lee to Bowen.

This was pertinent to the issue. It was offered to show the date, amount, and terms of the sale; and that security was taken for the purchase-money.

4. To the copy of Bowen's receipt to Mrs. Lee.

This was a copy of a voucher filed by Mrs. Lee with her final account. It was relevant to the issue; and, taken in connection with the testimony of Bowen, was important, as showing that the sale of the land had been ratified by the heirs of Lee.

The 1st, 2d, and 3d instructions, given for the plaintiff below, are excepted to.

As to the 1st instruction. Even were there any omissions in the steps preliminary to the sale, still these defects could only be taken advantage of by the heirs. The evidence shows that they had ratified it; and even if they had not, the administratrix having recognized the proceeds of the sale, in her final account, as assets, is estopped from controverting it.

As to the 2d instruction. That the distribution of assets, leaving debts unpaid, is a *devastavit*, is well settled. 2 Williams, Ex. 1105; 6 How. 239; 7 Ib. 126; 1 Dan. 514.

As to the 3d instruction. The evidence shows that she actually collected the proceeds of the sale; but even if she had not, it was her duty to have done so, and if she failed to perform that duty, her liability would be the same.

The refusal of the court to give the first and 2d instructions, asked by the defendant below, is also excepted to.

The 1st instruction was properly refused, because, although true as an abstract proposition, it was wholly irrelevant.

The 2d instruction was also properly refused, for two sufficient reasons : first, because the proposition laid down in it is, as we have already shown, not law; and secondly, because it was proven that she did take bond, and did receive the money.

It is earnestly contended by the counsel, in this court, of the plaintiff in error, that the judgment must be reversed, because the jury did not specially assess the amount of the *devastavit*.

This point was not made in the court below. It is presented for the first time in this court, and cannot, therefore, be noticed. 3 How. 215; 4 Ib. 93; 4 S. & M. 116; 9 Ib. 28. Even had it

been made in the lower court, it could not have been sustained. The declaration avers a *devastavit* to the amount of $17,604, and the record shows that a *devastavit* to that precise amount, exclusive of interest, was incontrovertibly proven. If, then, the judgment should be reversed on this ground, the court see and know, that upon another trial the verdict of the jury would of necessity be the same. A *devastavit* of $17,604 was proved by the record admissions, under oath, of the plaintiff in error. The verdict was for $12,026.68, less by upwards of $5,500 than the amount of the *devastavit*.

This court will never disturb a verdict where there is sufficient legal evidence to sustain it, nor grant a new trial, unless there is reason to believe a different result would ensue. 3 How. 219; 4 Ib. 338; 5 S. & M. 226, 508; 1 Ib. 22, 157, 400.

The plaintiff in error stands upon the record in this attitude. The estate of her intestate was indebted to the defendant in error, and she had full knowledge of the fact. She obtained an order to sell the land, on the ground that it was needed for the payment of debts. She sold the land, and received for it more than enough to pay off all the debts; and out of the proceeds of the sale, she did not pay a single claim against the estate.

*H. T. Ellett* and *J. B. Thrasher* filed an elaborate brief on the same side.

Mr. Justice HANDY delivered the opinion of the court.

This is an action of debt brought by the defendant in error against the plaintiff in error, founded on a judgment against her as administratrix of Charles S. Lee, deceased, and seeking to recover for a *devastavit* committed by her. Several questions of great importance and no inconsiderable difficulty have been presented in very able arguments by the counsel for the respective parties. These questions will be noticed in the order in which they have been presented in behalf of the plaintiff in error.

The first objection is raised by demurrer to the declaration, and it is insisted that the action of debt for *devastavit* cannot

be maintained under our laws; that it was a common law remedy, and cannot be maintained, except under the circumstances and for the reasons by which it was justified at common law; that the reason on which it was founded at common law was, that the original judgment against the administrator was an admission of assets, which necessarily rendered him liable to an action for *devastavit,* upon his failure to satisfy that judgment; but that this reason fails in this State, because such a judgment is no admission of assets in the administrator's hands under our law, and, therefore, that the remedy does not exist here. Let us examine this position.

The action of debt lies whenever the demand is for a sum certain, or capable of being readily reduced to a certainty. Consequently, it lies upon a judgment, when that is the foundation of the action and the matter sought to be enforced. It is held by the highest authorities, that, in actions of debt on judgments for *devastavit* at common law, " the foundation of the action is the judgment obtained against the administrator." *Wheatley* v. *Lane,* 1 Saund. 219, b., n. 8; 2 Wms. Ex'rs, 1420; *Gordon's Administrator* v. *Justices, &c.* 1 Munf. 12. But why is it the foundation of the action? It is insisted, in behalf of the plaintiff in error, to be because it is a confession of assets sufficient to pay it by the administrator; and it is contended that, where it has not the effect of such confession of assets, it cannot be the foundation of the action. We do not consider this position tenable.

In England, a judgment against the administrator had two effects: first, to establish the claim against the estate; and, secondly, to charge the administrator with an admission of assets sufficient to pay it. The first had reference to the liability of the estate, and fixed that; the second had reference to the administrator, and affected his individual liability. The first is the most important and indispensable, because it is really the foundation of the liability. And hence it is held, that no action of debt, for the *devastavit* of the administrator, lies upon the bond of the intestate, or upon a judgment against the intestate, there being no judgment against the administrator ascertaining the liability of the estate. The judgment

Lee *v.* Gardiner.

against the intestate might be paid, and therefore it is required that the judgment be perfected against the administrator in due form, before it can be enforced as a demand against the estate. But where the judgment is obtained against the administrator, it establishes the claim against the estate, and thereby becomes the foundation of all subsequent proceedings at law to obtain the fruits of it from the administrator. The consequences which result to the administrator from the rendition of the judgment against him, and which involves his individual liability, are matters of consideration distinct from its being the foundation of the claim against the estate.

By the common law, an important consequence of the judgment was an admission of assets by the administrator, which dispensed with any further evidence in another proceeding to establish that fact. This was a mere rule of evidence charging the administrator. By our laws, this rule of evidence is abolished, and the presumption of assets resulting from the rendition of the judgment against the administrator is destroyed. But this does not destroy or affect the main effect of the judgment, as the foundation of the plaintiff's claim against the estate. Nor does it debar the plaintiff from proceeding, by any remedy recognized by the common law, to enforce his judgment against the administrator. It only deprives him of the benefit of the evidence of assets arising from his admission, and puts him to the proof of the *devastavit* by other evidence. In this State, as in England, the administrator is liable for a *devastavit*, upon proof of assets received and wasted by him. In England, the liability was established by the judgment, execution, and return of "*nulla bona.*" Under our laws, this is insufficient to establish liability. But does this difference in the mode of proof take away the remedy existing, by the rules of the common law, in a case where the *devastavit* had been actually committed, and was susceptible of proof? We think not. A statutory alteration of a rule of evidence in a particular action does not necessarily take away the form of the action. It may render necessary further averments in pleading, in order fully to set forth the state of case creating a liability on the defendant; and such is the case in this ac-

tion. But this does not change the nature and form of the action.

We have above adverted to the general rule of pleading; that the action of debt lies for a sum certain, or which is capable of being reduced to a certainty. Here, the judgment against the administratrix, which is held to be the foundation of the action for *devastavit*, ascertains the amount of the plaintiff's demand. The averments of the declaration set forth the acts of the administratrix which create a liability to pay that judgment, and it only remained to estimate the damages consequent upon the detention of the debt. Upon general principles of pleading, the action is, therefore, clearly maintainable. 1 Chitt. Pl. 123 (6th Am. Ed.). It is admitted to be the usual and preferable mode of proceeding in England, and it would indeed be strange that a well settled common law remedy should be held to be taken away in a case of plain breach of duty and consequent liability, because the statute had provided that the liability should be made out by positive evidence, and not by mere technical presumptions. Moreover, this form of action has received the sanction of this court, and that too in the case in which the rule of non-admission of assets, here relied on in opposition to the action, is settled. *Howard v. Cousins*, 7 How. 114. It is not to be supposed that the court could have sanctioned that action, unless it had been considered that the rule then announced did not militate with the action.

We are, therefore, of opinion, that the demurrer for this cause was properly overruled.

The second objection is, that the judgment recited in the declaration was void, for want of a proper plaintiff at the time of its rendition. It appears that the suit was instituted in the name of " Christopher Dart and William Gardiner, copartners under the name of Dart & Co., for the use of Christopher Dart." Before judgment, Dart died, and his death was suggested, and the suit progressed to judgment in the name of William Gardiner, surviving partner. It was not revived in the name of the legal representatives of Dart, the usee; and the plaintiff in error, therefore, insists that the suit abated, and that the judgment rendered in it was void.

Lee *v.* Gardiner.

The statute touching this point provides that, in case of a suit commenced in the name of any person for the use of another, " the same shall not abate by the death of the nominal plaintiff, but shall progress to final judgment, &c., in like manner as if brought in the name of the person for whose use such suit was instituted, who shall be liable for the costs of suit, as in other cases ; " and in case of the death of such usee before final judgment, " it shall be lawful for the party representing such deceased person, as executor or administrator, to be entered on the records and papers in the place of such deceased person." Hutch. Code, 842.

By strictly legal rules, the usee is not a party to an action. He is only treated as such "in virtue and to the extent of the provisions of this statute. It has reference to two states of case : first, where the nominal plaintiff dies ; and, secondly, where the usee dies, the nominal plaintiff surviving. The first has no application here, because the action survived to the surviving partner of Dart, who continued the nominal plaintiff. But in case of the death of the usee, the nominal plaintiff surviving, does the suit abate ? The statute does not so declare. It merely makes it lawful for the administrator to be entered of record in the place of the deceased. It would seem that unless he sees proper to exercise that right, the suit would progress without it, there being already a legal plaintiff capable of representing it. It is not provided for in the statute, and must be governed by the rules of the common law. It has been held by this court that the name of the usee may be stricken out on motion. 4 S. & M. 352. If he were the legal plaintiff, and a necessary party, this could not be done, for it would have the effect to dismiss the suit. We think that the proper interpretation of the statute is, that the administrator of the deceased usee may become a party to the suit ; but if he fails to do so, that the suit may progress in the name of the nominal plaintiff, he being accountable for the avails of it to the administrator of the usee. If this be true, it did not render the judgment void, that it was entered " for the use aforesaid."

Another objection raised on the demurrer is, that this action.

cannot be maintained by Thrasher as assignee in the manner in which it is brought, "William Gardiner, survivor, &c., suing for the use of John B. Thrasher, assignee of Christopher Dart, in his lifetime." It is said that the record shows that Dart died before the original judgment was rendered, and therefore could not have assigned the judgment in his lifetime.

If this action had been brought in the name of Thrasher as the legal plaintiff, claiming as assignee, this objection would be well taken. But the suit is in the name of Gardiner, for the use of Thrasher, assignee, &c. It was competent for Dart in his lifetime to assign to him the beneficial interest in the suit, not to make him a party to the suit, but to entitle him to the proceeds of it. This would entitle him to the benefit of the judgment as an equitable assignee, and as such, would justify the institution of the suit in the name of the legal plaintiff for his use. 2 S. & M. 250; 6 Ib. 440; 7 How. 216.

But upon demurrer, though the assignment were invalid, the suit would be maintained in the name of the legal plaintiff. 6 S. & M. 70.

Again, it is urged that this judgment is erroneous under the pleadings.

The declaration avers that the administratrix had of the goods, chattels, credits, and sums of money which were of the estate of the deceased at the time of his death, in her hands to be administered, to the amount of the plaintiff's judgment, of which she distributed the sum of $13,395, to the heirs, and thereby committed a *devastavit.*

The fourth plea is, that no money or credits which were of the deceased at the time of his death came to her hands, and that all the goods and chattels of the deceased at the time of his death which came to her hands, were duly sold by order of the probate court, and the proceeds duly paid to the creditors of the deceased, and that no part thereof was wasted or misapplied. To which the plaintiff replied in substance, that the administratrix represented the personal estate to the probate court to be insufficient to pay the debts, obtained an order to sell the real estate, which she sold for that purpose, for $20,092.50, and received the money, but did not apply it to the payment of the

debts of the estate.    And to this replication the defendant demurred generally, which was overruled.

In support of the demurrer, it is urged, 1st, that the lands mentioned in the replication, were not assets in the hands of the administratrix, but descended to the heirs at law, and if sold, that the proceeds became equitable assets, to be administered by a court of equity, and that no legal _devastavit_ could be committed of them.    2d, that the replication was a departure from the declaration, which avers a _devastavit_ of goods, chattels, credits, and moneys which were of the deceased at the time of his death, while the replication alleges a waste and misapplication of the proceeds of lands sold after the intestate's death.

The main point involved in both these objections is, whether the real estate of a deceased person administered by the probate court, or under its jurisdiction, for the payment of the debts of the deceased, in case of insufficiency of the personal estate properly shown, is assets subject to such administration as of the time of the death of the intestate, and whether the administrator is responsible to creditors for the proceeds as for assets of the deceased at the time of his death.

By the statute (Hutch. 666, § 98), the probate court is required to direct a sale of the lands of the deceased for the payment of debts, in case of insufficiency of the personalty.    Its jurisdiction over the lands is as ample as over the personalty. They are equally liable to the payment of the debts of the deceased, the personalty being only required to be first exhausted; and both appertain to the regular and exclusive jurisdiction of the probate court in " matters of administration."    The sale is required to be made by the administrator as a part of his regular duty of administration, without further security for the performance of it than the bond given by him as administrator of the goods, chattels, and credits of the deceased at the time of his death, and finally, in case of insufficiency of both real and personal estate to pay the debts, the proceeds of both are distributed alike to and among the creditors ratably.    From all this it is manifest, that lands are subject to administration for the payment of debts as of the assets of the deceased at the time of his death, that it is the duty of the administrator, in

case of deficiency of the personalty, to sell them for that purpose, under the order of the probate court, which he is required to obtain, and when sold, that he is responsible for the proceeds as assets of the deceased at the time of his death.

It may be said that the lands are not assets until they are sold and the proceeds received, and this is true so far as the actual administration of them is concerned. Yet they are nevertheless assets subject to the payment of debts before the actual appropriation of them to that purpose. Nor are they the less assets, because their liability as such depends upon the contingency of the deficiency of the personalty. When that contingency occurs, they become as completely subject to the payment of debts as the personalty, and assets upon the same principle as the personalty, their liability as such having relation back to the death of the deceased. If this be not true, it may with equal reason be said, that the personal property is not assets, and subject to the payment of debts from the time of the death of the deceased, because it may not be necessary to sell it, and when it does become necessary, it cannot be done without an order from the probate court. But this would scarcely be asserted.

It follows from this, that the allegation in the replication of a waste of the proceeds of the sale of the intestate's lands, is not a departure from the averment in the declaration of a *devastavit* of the " credits and moneys " which were of the deceased at the time of his death. It is not an abandonment of the ground taken in the declaration, but a " restatement in a more minute and circumstantial manner of the cause of action set up in the declaration," which is allowable as a new assignment. 1 Chit. Pl. 659; Gould, Pl. 366, note 14; Ib. 457, § 75.

Under the circumstances of this case as presented by this demurrer, it is immaterial whether the proceeds of the sale of the lands were equitable or legal assets. It is clear that they were the latter, and that the administrator acts in relation to the lands in his official capacity as administrator, and not as trustee. And the proceeds of the sale of lands in such cases are administered in the same manner as the avails of the personalty. Hutch. 667, § 3; and all distinction between legal

and equitable assets in the administration of them in the probate court, seems to be destroyed. But if the funds in this case were equitable assets, under the pleadings they were still liable to the plaintiff's claim. It is averred that the administratrix did not apply them to the payment of the·debts, but distributed them to the heirs, and it does not appear that there was any other debt except that of the plaintiff.

In any point of view, therefore, the demurrer to the replication was properly overruled.

Another error assigned is, that the original judgment against "Ann Lee, administratrix of Charles S. Lee, deceased," was improperly admitted in evidence on the trial, because it was a judgment *de bonis propriis*, and did not charge the estate, and therefore did not sustain the declaration. But it has been held by this court, that such a judgment binds the estate and not the administrator individually. 4 S. & M. 113.

Again, it is contended that it was error to admit the probate court records on the trial, because the transcript offered was imperfect. The certificate of the probate clerk states, that it is a "true and perfect copy of the original papers, orders, and proceedings," in the probate court and of record, "excepting the bond executed at September term, 1838, by the administratrix for the sale of certain real estate." It is said that the omission of this bond rendered the transcript imperfect, and therefore admissible.

It is certainly competent for a party to introduce as evidence such proceedings of the probate court, and such acts of the administrator of record there as are necessary to establish his case. He may introduce the inventory, the account of sales, or the final account returned to the court by the administrator. Such a record is not an entire thing as in an action at law. Moreover, the bond alluded to, so far as it had any connection with the case on trial, must have been void, for it would seem to have been executed on the application to sell the lands for the payment of debts. If executed in such a proceeding, it is unauthorized and void. If executed in any other proceeding, it was irrelevant to the case on trial, because the action was brought to recover from the administratrix for the money aris-

ing from the lands sold by order of the probate court, for the payment of debts.

Nor is the objection to the receipt given by Bowen well founded. That was a copy of a receipt on file in the probate court, and returned by the administratrix as a part of, and voucher to, her final account, showing the payment of $13,395 by the administratrix to Bowen, in right of his wife, as one of the heirs of Charles S. Lee, for his interest in the money arising from the sale of the lands, as mentioned in the pleadings. It was returned as part of her account, adopted as her act, and made a part of the record. It was no valid ground of objection that it was introduced apart from the transcript, for the reason above stated; and, indeed, it is difficult to perceive any plausible ground of objection to such evidence.

The plaintiff in error insists that the plea of the statute of limitations of three years was a good defence to the action; that this was an action of debt "founded on a contract not under seal," and is embraced by the 4th section of the act of 1844, Hutch. 830.

This question is not free from difficulty. The solution of it depends upon what is to be considered the foundation of this action. Some cases hold that the *devastavit* is the foundation of it, and that *nil debet*, or even not guilty, is a good plea to it. 2 Lord Raymond, 1503; 1 T. R. 462. Other authorities hold that the judgment against the executor is the foundation of the action. 2 Williams, Ex'ors, 1420; 1 Saund. 219, note b; 1 Munf. 12; and it is classed in the works on pleading, as an action of debt on record. 2 Chitt. Pl. 484. These authorities seem to be the better sustained on principle. The object of the action is to enforce the judgment against the same party against whom it was originally rendered. Under the rules of the common law above mentioned, he became personally bound by the rendition of the judgment, by reason of the presumption of assets. There it was but a direct enforcement of the judgment against him when he was sued in debt upon the judgment. Here the judgment establishes the debt, and can be enforced against him upon the further proof of acts rendering him liable individually to pay it. Still it is the judgment

which he becomes bound to pay, and which is sought to be enforced.

It is said that the foundation of this action is the implied contract of the defendant to pay the judgment, and, therefore, that it is an "action of debt, founded on a contract not under seal." But the same authorities which held this, also hold that it is a case of *tort*, and the plea of not guilty is proper. 1 T. R. 462. And this reasoning would have greater force if it were not for the fact that the judgment is sought to be enforced against the same party against whom it was originally rendered, and who is shown to have been liable to pay it at the time it was rendered.

Such a case is not embraced in the 4th section of the statute, but must come under the 8th section, and be regarded as an action of debt on judgment, which is not barred until the lapse of seven years. Consequently the plea of limitation of three years, under the 4th section, was no bar to it.

Another ground of error urged in behalf of the plaintiff in error is, that on the trial the verdict did not find the amount of assets wasted, and the extent of the liability of the administratrix was not ascertained; and that, therefore, no judgment could be entered on the verdict. Many authorities are cited in support of this position; but they seem to be cases of original actions brought against the administrator in his representative capacity, and not actions for *devastavit*. Where the declaration states the amount of assets, and it appears to be sufficient to pay the plaintiff's claim, and the defendant demurs to the declaration, this is held, in an action for *devastavit*, to dispense with proof of the amount of assets, and sufficient to support a judgment. *Hoggatt* v. *Montgomery*, 6 How. 93. Here the evidence showed assets and a *devastavit* to a greater amount than the judgment rendered for the plaintiff. The plaintiff's demand, as stated in his declaration, was supported by sufficient proof, the extent of the defendant's liability was clearly established, and the judgment properly rendered.

The last objection made is, that the defendant was not permitted to defend, on the ground that the sale was void, and that if the sale was void, the proceeds of it were not assets, but

were held by her to the use of the purchaser. It does not appear how the sale was alleged to be void, and this objection seems, therefore, to be a mere abstract proposition. But if it was void as to the heirs of the deceased, as is stated, it is shown by the evidence to have been acquiesced in and ratified by them, and that they received their portions of the proceeds. This would estop them from denying the validity of the sale. In fact it appears that one of the heirs himself became the purchaser, he representing one third for himself and another third for his ward, and for these amounts that he executed his acquittance to the administratrix, who held in her own right the remaining interest. Thus all interests were satisfied, and the validity of the sale placed beyond successful controversy.

But apart from this, after the administratrix had reported the sale to the probate court, received the money arising from it, and charged herself with it in her final account, it *could not* be permitted to her, when no proceeding was taken to avoid the sale, or to render her liable on account of any invalidity in it, to treat her own acts as illegal, and appropriate to her own use and to the heirs funds which, in law and justice, belonged to the creditors of the estate.

Upon a view of the whole case, we are of opinion that the judgment should be affirmed.