Sneed, J.,
delivered the opinion of the court:
The plaintiff, Luster, was indebted to W. 0. Scruggs, prior to the 16th of June, 1862, in the sum of $743.05, evidenced by note, payable in dollars. This note had been placed in the hands of Abijah Scruggs, the testator of the defendant, to secure him harmless as the security for costs in a certain litigation then pending in the circuit court of Greene county.
The condition of this deposit is thus stated in the receipt given by Abijah Scruggs at the time: “blow, if I, Abijah Scruggs, or my heirs or executors, should have to pay any costs, it is to come out of this note, and if I have none to *516 pay, then I am to return or account'to said Scruggs for this note, and interest.”
The original note bore interest at ten per cent., and it was renewed on the 1st of January, 1862, in the hands of Abijah Scruggs, in a note for $817.35, at six per cent, interest, and payable in dollars. The renewal, it seems, was made in the presence and with the consent of the payee, "W. C. Scruggs. On the 16th of June, 1862, the note was again renewed, and a note given for $839.82, payable on the 1st of January, 1863, in "common currency.”
The plaintiff, in regard to this transaction, testifies as follows: “The original note was for‘dollars.’ The last note was changed to ‘common currency.’ I was opposed to the note standing for dollars, and I was told by W. G. Scruggs, that gold might be collected on the first note. W. 0. Scruggs, Abijah Scruggs, and myself, were all present when the note was renewed. It was changed at my request, and W. 0. Scruggs was present when the change was made from ‘dollars’ to ‘common currency,’ and made no objection.” On the 1st of January, 1863, when this note fell due, the plaintiff, Luster, paid the amount to Abijah Scruggs, and took up the note. After the late civil war, W. 0. Scruggs having repudiated the transaction, filed his bill in the chancery court, to recover the amount of the note from the plaintiff, Luster and Abijah Scruggs, and recovered a decree against them for the amount, this court, upon appeal, holding Luster personally liable. [See Scruggs v. Luster, 1 Heis., 150].
The amount of this, decree was paid by Luster, and he has brought this action to recover the amount of Abijah Scruggs. There was judgment below for the plaintiff for the value of the Confederate money, from which an appeal in error has been prosecuted by the defendant.
It was agreed in the court below that the transcript of this chancery cause should be produced in evidence in the trial of this case, which was done. The defendants to that *517 proceeding are required to answer on oatlq and the answer of Abijah Scruggs gives the following version of the transaction of June 16th, 1862: “On the 16th of June, 1862, the note was again changed by the execution of a new note for the sum of $839.82, dated of that day, payable on the first of January, thereafter, in common currency. Upon this occasion the complainant came out with the. defendant, Luster, to this respondent, and said they had agreed to make this alteration in the note, and, accordingly, did' so, the complainant at the same time directing the defendant not. to demand specie from defendant Luster, but to take from him, in payment of said note, common currency, such as was in circulation at the time the note fell due, which was on January 1, 1S63, at ■which time Confederate treasury notes constituted tbe common currency of the country. And, accordingly, on that day, the defendant, Luster, paid respondent the sum of $839.82 in such Confederate treasury notes, the full amount of said note and interest, and tire note wyas thereupon surrendered ti> him.”
The theory of the defense is, that the payment of the Confederate money, under these circumstances, was a mere deposit or bailment, and that a demand for it must be shown before a right of action could accrue to the plaintiff. We think this theory of the defense is disposed of by the foregoing admission that this transaction was a- collection of what was treated and recognized as the common cuirency of the country, in which the note was payable by its terms. The Confederate treasury note at that time was not a mere commodity, but, as this court has frequently held, it had, in private transactions among men, all the elements of money, as defined by the courts. It was money, both in a commercial and legal sense, as much so as bank notes or any other paper currency. Burford v. Memphis Bulletin Co., 9 Heis., 691.
It is very-clear from the proof that the defendants’ testator had the authority to collect in the “common currency,” and that he did collect is not disputed.
*518 By the terms of the receipt, be did not alone bind himself to return the note, but there was the alternative obligation to account for the proceeds thereof — imparting very clearly an authority to collect.
If, then, the defendant’s testator received the amount as money, no demand upon him was necessary in order to give the plaintiff a right to bring this action. But he was in the exact condition that he would have been had he collected the note in any other currency. The law imposed upon him an obligation to pay the amount to plaintiff without a demand, and in this view the charge of the court w'as correct, and in the refusal to charge as requested there was no error. Nor was there any error in the rejection of the testimony in regard to the package of Confederate money seen among the papers of the defendant’s testator. In the first place, the testimony did not propose to identify the package as the money paid by the plaintiff, and even if it had been identical in amount, the testimony W'ould have been irrelevant and improper, as the-liability of defendant’s testator wras already fixed and established by taking into his possession’ the plaintiff’s money under the facts as established. If the money was wrongfully received, and without any legal right or authority to receive it, the law, at the very time of payment, creates the obligation to refund it. Nor does demand, or a notice of intention to recover it back, create the right to recover it back. Story Ag., sec. 300, note 3. The defendant’s testator says he was specially instructed by W. 0. Scruggs not to collect the note in specie, but the note speaks for itself, and was collectible in common currency, which was at that time Confederate money. His possession of the note itself, outside of any special instructions, imparted an authority to collect it (Stray Ag., sec. 98), and even if he took the money in mere bailment, and by his own negligence or inattention it was suffered to become depreciated and lost, he would.still be accountable in this action with *519 out a specific demand. Story Bail., sec. 107; 9 Johns. R., 861; 3 Greenl. R., 308. The wrong to the plaintiff was in his long neglect of his plain duty to make known the facts to the payee of the note, so as to protect the plaintiff hy refunding the money before the events of the civil war made it worthless.
He says the payee was in the army, and communication was difficult; but it does not appear that during that long period of more than two years, that communication was impracticable.
it may be a hard case on his estate to lose the amount, but his negligence has occasioned the necessity that the loss should fall upon the plaintiff or himself, and the plaintiff being utterly blameless in the matter, the loss should not fall upon him.
But it is insisted that the plea of the statute of limitations to the amended declaration, should have been' sustained. And it is true, as contended, that the doctrine that an amendment relates back hr the time of the original summons, cannot be invoked to defeat a valid defense of the statute of limitations.
But we do not understand that the new count to the declaration changes the form of the action. It merely sets forth the special facts of the case upon which a recovery is sought. It is still an action on the contract. Code, sec. 2775 [Shannon’s Code, sec. 4472]. It is still of debt, and this action lies wherever the sum due is either certain or ascertained in such a manner’ as to be readily reduced to a certainty, without regard to the manner in which the obligation was incurred, or was evidenced. 3 McLean, C. C., 150; 26 Miss., 521; 2 Greenl. Ev., sec. 279.
We see no sound reason why this verdict may not be sustained upon the first count of the declaration, but the second count is in substance and effect an action of debt upon the implied contract; and whether the contract be express or implied, the plaintiff may allege, and under the *520 general issue must prove, all tbe material facts from which the obligation arises, the proof being generally the same as in assumpsit for the like causes of action. 2 Greenl. Ev., 281.
The sum demanded is the value of the Confederate money paid to defendant’s testator, a sum not speculative or conjectural, but susceptible of absolute certification by proof. We think, in any aspeet of the case, that the judgment is right, and it will be affirmed.