DIANA A. WILIE et al. *v.* J. F. BROOKS.

1. EQUITABLE ESTOPPEL — VOID SALE RATIFIED BY RECEIPT OF PURCHASE-MONEY BY THE HEIR, WHO IS ADULT. — If the heir receives, by distribution, the purchase-money of land of the ancestor, sold under a void decree of the probate court, it is the settled doctrine in this state, that, as to an adult heir, such receipt is an estoppel from contesting the title.

2. SAME — MINORS, HOW AFFECTED. — A minor heir is not estopped from asserting title in such case, unless, after his majority, he ratifies such distribution of the purchase-money, but the purchase-money so received in the distributive share of a minor, should be refunded by his guardian before assuming possession of the land, or it should be made a charge upon the land.

3. CASES CITED. — The cases of Lee v. Gardner, 26 Miss. 548, and Kemp et al. v. Pintard, 32 ib. 324, cited and applied.

4. OTHER GROUNDS OF ESTOPPEL. — Besides an estoppel by an acceptance of the purchase-money, parties holding the paramount legal title may be barred in

various other ways by their own acts, and they will be enjoined in equity from asserting their legal title, various examples of which are put in the opinion of the court.

5. IMPROVEMENTS — COMPENSATION FOR, WHEN ALLOWED. — Where improvements are made, *bona fide*, and without notice of any defect of title, and have permanently enhanced the value of the property; or where the holder of the legal title has lain by and allowed the improvements to be made without giving any notice of any defect in the title, this is a just ground for equity to afford relief and decree compensation to the extent of the enhanced value of the property, by reason of such additions; and a court of equity might, under circumstances, go further and oblige the real owner to permit the person making such improvements on land, to enjoy it quietly and without disturbance.

APPEAL from the chancery court of Pontotoc county.

*Sale & Dowd,* for appellants.

1. The record shows that complainant has no legal or equitable title to the land in dispute.   The bill itself alleges the sale to be void, and a void order of the probate court can confer no title whatever.   Campbell v. Brown, 6 How. 106; Packett v. McDonald, ib. 269; Givin v. Carroll, 1 Smedes & Marsh. 368; Laughman v. Thompson, 6 ib. 259; Planters' Bank v. Johnson, 7 ib. 449; Matlock v. Livingston, 9 ib. 489; Williams v. Childress, 25 Miss. 48, 49, 78; Root v. McFerrin, 37 ib. 47, 48, 49.

2. The bill prays to have the valid fee simple title in appellant divested out of them and vested in him, appellant, without showing any legal or equitable title.   The court of chancery has no control or jurisdiction over the rents, the issues and profits, the title or right of possession.   Ezelle v. Parker, 41 Miss. 520.   Complainant cannot demand the assistance of a court of equity until he shows a title in himself good in law and equity.   Jayne v. Boisgerard, 39 Miss. 798.   The remedy at law to recover the rents and profits and for improvements is plain, adequate and complete at law under the statute (Woody v. Hooper, 38 Miss. 62, 65, 67), and cannot be set up in a court of chancery.   The complainant cannot invoke (Cooke et al. v. Tombs, 36 Miss. 689, 690), because he has paid no judgment against the ancestors or administrators, and is not a creditor.   The pro-

ceedings of the probate court are null and void and nothing was paid to the heirs. The bill shows no title, legal or equitable, in complainant. Hooper v. Hill, 35 Miss. 70, 71; Kerr v. Freeman, 33 ib. 293; Shotwell v. Samson, 30 ib. 27; Echols v. Hammond, ib. 177. The demurrer should therefore be sustained to the bill, the decree of the chancellor reversed, and this court rendering the proper decree will dismiss the case.

*Geo. L. Potter*, for appellee.

Having received the proceeds, the heirs, at least the adults, are precluded from asserting their title. Kemp v. Pintard, 32 Miss. 331, 332; Lee v. Gardner, 26 ib. 547, 548. The demurrer being for all the defendants, must be overruled, if not well taken as to all of them.

After the parties have lain by, permitting the honest purchaser to make permanent improvements, on the faith of his title, and without question as to the validity of the sale, they are estopped in equity to assert their title to the prejudice of such purchaser; and they are estopped also in equity by receiving the proceeds of the sale. See on equitable estoppels, 2 Story's Eq. Jur., § 1533, *et seq.*

The case seems one specially proper for adjustment in a court of equity, where the purchaser may have his title quieted and a proper deed made to him. The bill is not, it is true, as full as it might have been made upon the evident facts of this case, and the court will, if necessary, direct an amendment to be made.

TARBELL, J. :

This is a proceeding in chancery to restrain an action at law. To the complaint there was a demurrer, which was overruled, from which defendants appeal to this court. The record presents substantially the following facts : In the latter part of the year 1852, or early in 1853, John F. Brooks and James W. Drake, purchased, jointly, from Jefferson Wilson, administrator, etc., of John Wray,

deceased, certain lands described in the bill.    Shortly after such joint purchase, Brooks became the sole owner of those lands, by purchase of the interest of Drake.    Brooks went into the possession of the lands described, and made valuable and substantial improvements, to the value of $2,000, and continued to occupy the lands until his death in 1856. John F. Brooks, the complainant, is the only child and sole heir of said John F. Brooks, deceased.    In 1861, the heirs of Wray, deceased, instituted an action of ejectment against said John F. Brooks, the complainant herein, for the recovery of the possession of said lands.    In 1867, Brooks filed this bill of injunction to restrain the further prosecution of the action at law.    The bill charges that the sale by the administrator was void, for want of authority in the probate court to direct the sale ; that the administrator, in 1859, rendered his final account as such, wherein he charged himself with the money received for said lands ; that, subsequently, the plaintiffs in ejectment, the adults in person, and the minors by their guardians, ratified the said sale so far as to accept from the administrator their respective distributive shares of the purchase-money of said lands. It is further charged to be inequitable in the plaintiffs in ejectment to retain the money paid for said lands, and at the same time to sue for and recover the lands.    And it is alleged that the minors, whose guardians received their respective shares of the purchase-money for said lands, have since arrived at their majority, and have done no act since coming of age in disavowal of the said acts of their guardians.    The bill prays that the lands be decreed to the complainant ; or, that the defendants be required to refund to the complainant the purchase-money of said lands, and interest ; that an account be taken of the rents and of the improvements, which the complainant demands shall be allowed to him, and for general relief.

The deed from the administrator to Drake and Brooks, under date of October 21, 1850 ; the deed from Drake to Brooks ; transcript of the records of the probate court in

the estate of Wray, deceased, including administrator's bond, letters of administration, items of final account of administrator, report of sale of the lands in controversy, order for citation on petition to sell real estate, confirmation of final account of administrator, etc., are made exhibits.

The following among other causes of demurrer are specified: Want of jurisdiction and of equity; that the complainant has ample remedy at law; that a void sale of land cannot be validated by subsequent ratification; that no lien exists on the lands for purchase-money or improvements; that the bill shows that defendants have the legal and equitable title to said lands; that the allegations of the bill are too vague and indefinite to admit of an answer; that the bill is frivolous, informal and insufficient, etc.

The demurrer was overruled, with leave to answer, which was declined, and the defendants appealed, assigning numerous causes of error, the following being the material allegations: Want of equity jurisdiction and of equity; that the appellant shows neither legal nor equitable title to the lands in dispute; that it is not shown that appellants were ever made parties by citation to the final settlement or to any of the proceedings of the probate court; that the remedy of appellee is at law, etc.

The bill in this case is very inartificially drawn, and the exhibits referred to are a mass of unintelligible repetitions and confusion. The particular defects of title are not disclosed, and it does not appear whether they were discovered by ordinary diligence and examination. It is, however, distinctly charged, that the purchase-money of the land in controversy was distributed to and received by the heirs now prosecuting the action of ejectment. It is also charged, that the several purchases mentioned were made in good faith for a valuable consideration, and without notice or knowledge of any defect of title or power on the part of the administrator to sell and convey a good title. It further appears, that of the parties, plaintiffs in the action at law, at the date of its commencement in 1861, three were adults

and two minors.   In 1867, when this bill was filed, we infer that the two minors mentioned had attained their majority. We also infer, that except one who removed to Virginia before attaining majority, these parties all resided in Pon-totoc county, where the lands involved are situated and all these transactions occurred.   The lands were sold in 1852, 1853.   Ejectment therefor was brought in 1861 ; and thus the complainant, and those through whom he holds, had been in possession of these lands seven or eight years when the latter action was instituted.   Story's Eq. Jur., § 959.

To the several questions of law and practice involved in this case we will briefly refer.   Learned v. Corley, 43 Miss., presented two questions for adjudication.   The first was, whether in an action of ejectment, wherein the plaintiff declined to demand damages for mesne profits, the defendant could, nevertheless, present on the trial a claim for improve-ments.   We held he could not.   The second was, who is a "*bona fide*" purchaser within the meaning of art. 20, Rev. Code, 389 ?   Upon this point we determined that each case must depend more or less upon its own circumstances, but that a purchaser is bound to make inquiry and must exer-cise ordinary diligence in the examination of the title he is acquiring.   When it is matter of record, easily attainable, open to inspection, and apparent upon the face of the records, he is chargeable with notice, and is not, within the meaning of the statute referred to, a *bona fide* purchaser, if there be defects discoverable by ordinary care and prudence. Bright v. Boyd, 1 Story, 478 ; Learned v. Corley, 43 Miss.

Whether the complainant occupies the attitude of a *bona fide* purchaser may become important to determine, in the further progress of this cause, and hence the specific defects of title in the case at bar ought to have been set out, with the attending circumstances, and the reasons for the want of knowledge.

If the heirs received, by distribution, the purchase-money of the lands in controversy, the adults at least are estopped from contesting the title, and this is the settled

doctrine in this state (Kemper v. Pintard, 32 Miss. 331; Lee v. Gardner, 26 ib. 547), though otherwise as to the minors, who, however, may ratify such distribution after their majority. In case the minors received their distributive share of the purchase-money, their guardian ought to refund before assuming possession, or it should be made a charge upon the land.

In addition to an estoppel by an acceptance of the purchase-money, parties holding the paramount title may be barred in various other ways by their own acts, and they will be enjoined, in equity, from asserting their legal title. Story's Eq. Jur., §§ 64, 385, 386.

The estoppels possibly applicable to the facts at bar, upon a more full statement of complainant's case, are referred to in Story's Eq. Jur., §§ 385, 386, 387, 388, 389, 390, 391, 799 b, 1237, 1238; Storrs v. Barker, 6 Johns. Ch. 166; Wendell v. Van Rensselaer, 1 ib. 354; Pickard v. Sears, 6 Ad. & Ell. 474; Gray v. Bartlett, 20 Pick. 193; Skinner v. Stouse, 4 Mo. 93; 6 Ves. Jr. 193; 1 Bro. Ch. 315; 2 Sug. on Vend. 263; 6 Barb. 590; Savage v. Foster, 9 Mod. 35; Bright v. Boyd, 1 Story, 478; Pilling v. Armitage, 12 Ves. 84; Wells v. Bannister, 4 Mass. 514; 2 Atk. 83; 5 Ves. 688; Putnam v. Ritchie, 6 Paige, 390; Green v. Biddle, 8 Wheat. 77, wherein the doctrine is taught that, under the circumstances named, a party shall not be permitted to deny to an occupant of lands, under a supposed legal title, compensation for improvements thereon, and that, when justified by the facts, a court of equity will even restrain the real owner from disturbing the possessor in the enjoyment of the land. With reference hereto Story states these notes: 1st. "If a man, supposing he has an absolute title to an estate, should build upon the land, with the knowledge of the real owner, who should stand by and suffer the erections to proceed, without giving any notice of his own claim, he would not be permitted to avail himself of such improvements, without paying a full compensation therefor, for, in conscience, he was bound to disclose

the defect of title to the builder." 2d. "A court of equity might, under circumstances, go further, and oblige the real owner to permit the person making such improvements on the ground, to enjoy it quietly and without disturbance." Story's Eq. Jur., § 388.

It has been well said that "the silence of a party when, in good conscience, he ought to speak, shall close his mouth when he would speak." 6 Barb. 604.

"In all this class of cases," says Story, "the doctrine proceeds upon the ground of constructive fraud or gross negligence, which, in effect, implies fraud;" but it is believed that constructive fraud cannot be imputed to minors.

The foregoing rules, however, have been applied to minors of comprehensive age, when positive fraud has been clearly established. Story's Eq. Jur., §§ 385, 386, 388, and cases cited in notes. 2 Sug. on Vend. (9th ed.) 262, and cases in notes; Bright v. Boyd, 1 Story, 478; 2 ib. 605.

"Indeed," says Story, "cases of this sort are viewed with so much disfavor by courts of equity, that neither infancy nor coverture will constitute any excuse for the party guilty of the concealment or misrepresentation, for neither infants nor *femes covert* are privileged to practice deception or cheats on other innocent persons." Story's Eq. Jur., § 385.

In Bright v. Boyd, *supra*, Story, J., says: "There are certainly cases in which infants themselves will be held responsible in courts of equity for their fraudulent concealments and misrepresentations, whereby other innocent persons are injured." *Vide*, also, Savage v. Vortee, 9 Mod. 35.

Another rule should be stated, or referred to, as one to which this case seems to point. It is, that where a *bona fide* possessor or purchaser of real estate pays money to discharge any existing incumbrances or charge upon the estate, having no notice of any infirmity in his title, he is entitled to be repaid the amount of such payment by the true owner, seeking to recover the estate from him. This rule was declared by Judge Story, in Bright v. Boyd, to be founded upon a "broad principle," and he applied it in

that case, though the purchase-money was appropriated, not to the discharge of judgment or mortgage liens, but to the payment of debts of the testator, which were only a "charge" upon the estate. So far, the court said, the lands were relieved from a "charge" to which they were liable by law; and, on a bill, filed by the purchaser at an administrator's sale, void for the neglect to comply with the statute regulations, against the true owner, to adjust the rents and improvements, the learned judge declared it a matter of justice, upon the principles of equity and the merits of the case, to affect the lands directly with the "charge" to which they were held to be "clearly liable." Under this rule, if the purchase-money of the lands in controversy was not distributed to and received by the heirs, but was employed in the liquidation and discharge of the indebtedness of the estate whereof these lands were assets, then the complainant is entitled to have such purchase-money refunded, provided he was a purchaser in good faith. It was not necessary to this right that the money should have been devoted to the payment and discharge of a judgment or mortgage lien upon the lands. Cook et al. v. Tombs, 36 Miss. 685; Bright v. Byrd, 1 Story, 498.

So, also, as a general rule, chancery having acquired jurisdiction of a cause on any proper ground for one purpose, it will retain it for all the purposes of the litigation, subject, however, to limitations and exceptions, or qualifications as decided at the present term.

The allegation of the bill, that the defendants are estopped from asserting their title, because of the distribution to, and receipt by, them of the purchase-money of the lands involved herein, having conferred upon equity jurisdiction of this case it will be retained for all the legitimate objects of the bill.

The complainant's case rests upon several grounds. First, upon the receipt, by the defendants' heirs of the deceased owner of the estate, of the purchase price thereof, whereby they are barred from asserting their title, and the ratification of the minors of the transaction since their majority, or

upon the other grounds of estoppel, which have been mentioned. If this branch of the case is found for the complainant, that terminates the litigation. If, on the contrary, it is determined against him, then it will be proper to take an account of the rents and of the improvements. The claim for improvements may be presented on two grounds. First, that they were made *bona fide*, and without notice of any defect of title, and have permanently enhanced the value of the property. Secondly, that the defendants have lain by and allowed the improvements to be made without giving any notice to the complainant, or his ancestor, of any defect in the title, which, of itself, constitutes a just ground of relief, if warranted by the facts, and the rules heretofore stated. The complainant is not entitled to all the expenditures and disbursements, but to the enhanced value of the property by the ameliorations and additions. Story's Eq. Jur. ; Bright v. Boyd, 1 Story. This rule is further stated in art. 20, Rev. Code, 389, wherein, if the improvements allowed exceed the rents and profits, such excess is made a lien upon the estate, and the rights and duties of the respective parties are defined in an action at law, which would be a guide to a court of equity.

We have thus referred, in aid of the rights of the parties, to all the rules to which the bill apparently points. Of the opinion that the court was right in overruling the demurrer, we nevertheless advise a revision of the bill of complaint, when, upon the coming in of the answer, or, at all events, upon the final hearing on the bill, answer, exhibits, and proofs, the chancery court of Pontotoc county will be able, doubtless, to make a just, final and satisfactory disposition of this cause.

The decree overruling the demurrer is affirmed, and the cause remanded, with leave to defendants to answer within forty days from this date.