JOHN HANDY, Trustee, VS. FANNIE NOONAN et al.

1. VOID SALE OF LAND: *Confirmation thereof; estoppel.*

An acceptance by the heir or ward, after obtaining majority, of the purchase money of land sold under a void decree, is a confirmation of the sale in the sense and to the extent of working an estoppel in equity against an assertion of the legal title.

2. SAME: *Removing cloud; Sec. 975, Code of* 1871.

This statute affords the relief to remove clouds only to the "real owner" against any person not the rightful owner. The complainant must show clearly the validity of his own title and the invalidity of his opponent's. He must disclose a perfect equitable or a complete legal title.

APPEAL from the Chancery Court of *Madison* County.

Hon. SAMUEL YOUNG, Chancellor.

Complainants filed their bill to remove a cloud from their title to the land in controversy, and to have the legal title divested out of defendants and vested in complainants.   The litigation arises from what is admitted to be a void sale of the land in controversy, under a decree in the probate court, in January, 1853.

John Stone and his wife Eliza Stone were the guardians of A. E. Collins, Margaret S. Collins and Mary J. Collins, children of Mrs. Stone by a former marriage.   The minors were owners by descent from their father of certain lands, their guardians applied to the (then) probate court, and obtained a decree and sold the said real estate, when Jesse Heard became the purchaser at $575. The sale was confirmed and the purchase money paid, which the guardians charged the amount to themselves in their account. January 19, 1856, the guardians presented their final account as guardians of A. E. Collins, who had married P. T. Noonan, and citation issued to A. E. Noonan and her husband P. T. Noonan.

They appeared and excepted to the final account. It contained as one of the debits of the guardians, one-third of the $575. The account was restated and a decree rendered, whereby A. E. Noonan (the ward) was found to be indebted to the guardians the sum of $752.65.

The $191.66, constituting the one-third of the purchase money of the land, went to reduce, by that much, the amount ascertained by the accounting to be due from the ward (A. E. Noonan) to the guardians. She received after her marriage, and after she attained her majority, her one-third of the purchase money of the land in controversy. On May 19, 1856, presented their final account of the other two wards (M. S. Collins and M. J. Collins). The final account was audited by the court, as to each, and decree rendered, whereby it was found that a balance was due from each to the guardians; the amount due by M. S. Collins was $1,829.89 (the account of the other ward is not involved in this). In this accounting the one-third of the purchase money for the land was credited to each ward, and went to reduce by that much the indebtedness of each. Each ward received the purchase money according to her share of this land. It is admitted that the sale was void. Mrs. Noonan died leaving two children; M. S. Collins died unmarried. The interest of M. S. Collins vested in M. J. Collins (now Mrs. Ross) and the children of Mrs. Noonan; thus Mrs. Ross became the holder of the legal title of one-half (one-third and one-sixth) of the land, and she and her husband, Mr. Ross, conveyed to the complainants; Jesse Heard, having purchased the land at the guardian's sale, conveyed to Eliza Jane Stone, and she and her husband conveyed to complainants.

On the final hearing of this cause the court granted a decree awarding the one-half interest in the lands to the complainants, subject to a charge of the one-half of the purchase money paid for the lands with interest thereon, from which decree complainants appealed to this court, and assigned for error:

1. That the said decree awards the one-half interest in said

land mentioned to appellees, subject to a charge for the one-half of the purchase money paid for said land and interest on it. Whereas, said decree should have been in favor of complainants (appellants) as to so much of said interest of said defendants (appellees) as was derived by descent from their mother, the said Ann Eliza Noonan, who had received the purchase money for it, and was estopped from claiming it in her lifetime.

2. Said decree is erroneous, because it does not fix any time in which the said defendants shall pay to complainant the said purchase money found to be a charge on said one-half interest of said defendant. Whereas, said decree should have fixed some reasonable time in which said money should be paid, after which said defendants should be estopped from claiming said interest, or else, that said one-half interest, so held subject to said charge, should have been directed, after a certain time, to be sold, and that complainant should be paid the amount of said charge out of the proceeds of said sale.

*J. A. P. Campbell*, for appellants :

It is true, that the sale under the decree was void, and Heard acquired no title thereby, but it is also true, that Mrs. Noonan received her share of the purchase money, i. e., the whole purchase money of her one-third interest, by obtaining credit for it on the final account of her guardians. This reduced the amount due by her, and she paid the balance due by her, and accepted the purchase money as a credit. She is estopped from setting up any claim to the land. Lee *v.* Gardiner, 26 Miss., 521 ; Kempe *v.* Pintard, 32 id., 324; Wilie *v.* Brooks, 45 id., 542. At her death her heirs succeeded her, and they are also estopped, as their rights can be no greater than hers.

*Henry S. Foote, Jr.*, for appellants :

Filed a brief, in which he discussed the facts in the case, and insisted that there was no proof to show that the wards had attained their majority at the time guardians made their final settlement.

Oct. T. 1875.]    HANDY, Trustee, vs. NOONAN.              169

Opinion of the court.

SIMRALL, J., delivered the opinion of the court.

It is conceded by counsel that the sale made by John Stone, Jr., and Eliza, his wife, guardians of Ann Eliza Collins, Margaret S. Collins and Mary Jane Collins, is void, and did not divest the wards of their title to the lands in controversy.

But it is contended by the appellant that by acts subsequent to the sale, done by the parties under whom the defendants claim, the sale was confirmed; or, in other terms, defendants are estopped in equity from holding and asserting title or any sort of right, except to a charge of one-sixth of the original purchase money and interest upon the land.

The land descended to these minor children from their father, John Collins. The sale was made in 1853. In 1856, the guardians made a final settlement in the probate court with each of the wards, in which they charge themselves with proceeds of the sale as collected, one-third for the benefit of each. At the date of this settlement, Ann Eliza, who had intermarried with Noonan, and had attained, it seems, majority, appeared and contested the account. It was, however, finally adjudicated, finding a considerable balance due the guardians.

The decree is dated March 15, 1856, and on the 30th of June, following, is indorsed upon it the receipt of J. Stone, of "payment in full of the within or annexed decree." The final account as exhibited in the record contains a charge or a debit against the guardians for the proceeds of the land sale. It diminished *pro tanto* the indebtedness of the wards as determined by the decree. Two important facts are shown: First, that in the contestation in the probate court, the sale money is accounted for by the guardians, and the adjudication was that it had been properly applied to the credit of Mrs. Noonan. Second, Mrs. Noonan, after being credited by her guardians with the money, paid the balance due the guardians and took an acquittance therefor. An acceptance by the heir or ward, after attaining majority of the purchase money of land sold under a void probate decree, is a confirmation of the sale, in the sense and to the extent of working an estoppel

in equity against an assertion of the legal title.   Lee *v.* Gardiner, 26 Miss., 521 ; Kempe *v.* Pintard, 32 id., 324; Wilie *v.* Brooks, 45 id., 542.   Within the principle stated and applied in these cases, we are of opinion that Mrs. Noonan was estopped from setting up title to the third of the land descended to her; and that the estoppel is equally operative upon those who claim derivatively from her.   Mary Jane Collins and Margaret S. Collins were minors when the final settlements were made.   Margaret S. Collins died unmarried, and her interest vested in Mary Jane, her sister, and in the children of Mrs. Noonan, who had also died. Mary Jane, who had intermarried with E. Ross, held one-third of the property by inheritance from her father, and one-half of one-third by descent from her sister Margaret S.   She and her husband conveyed her interest to the complainants.   The defendants inherited one-half of the interest of Margaret S. Collins, their aunt, which is an undivided sixth of the property in dispute. By means of the estoppel wrought by Mrs. Noonan's receipt of the purchase money, and the conveyance of Ross and wife to the Right of Way Company, the complainants have established a right to all the land except the one-sixth derived by the defendants by descent from their aunt Margaret S.   The guardian's sale being admitted invalid, it follows that the defendants have legal title to one-sixth of the land, it is not claimed by the appellant, who derives title by mesne conveyances from the purchaser at the guardians sale, that any act has been done by any person through whom the defendants derive right to this one-sixth that works an estoppel upon them.   The object of the complainants' bill is to remove the cloud, which the title of the defendants, the surviving husband and the children of Mrs. Noonan, casts upon their title, and that they be precluded from asserting it.

In order to establish a claim to such relief, the complainant must show clearly the validity of his own title and the invalidity of his opponents.   Banks *v.* Evans, 10 S. & M., 62.   Complainants must disclose in themselves a perfect equitable or a complete legal title in the words of the statute that they are the "real owners."

Huntington *v.* Allen, 44 Miss., 663. The statute under which the bill was brought affords the relief to the "real owner against any person not the rightful owner" who shall "assert any claim or pretend a right, that may raise the doubt or suspicion" against the title, or of the real owner. Code 1871, § 975.

But the legal estate is in Noonan, the husband tenant, by the courtesy, remainder in fee to his children, the other defendants. What, if any, is the equitable right of the Right of Way Company? They hold such title by mesne conveyances, as passed to Heard, the purchaser, at the guardians' sale. But the probate sale did not divest the title of the wards. They have no equity, unless the settlement of the account in the probate court in 1856, wherein the guardians charge themselves with the money derived from the land, creates an equitable estoppel against Margaret S. Collins, then a minor. But a minor is incapable by any act, of whatever kind, to confirm and make valid a void sale. Indeed the learned counsel for the appellant concedes as much in his brief. He admits that one-sixth of the land ought to be charged with its first proposition of the purchase money, and if not paid by the complainants, a sale should be made to raise it. In this view of the case, the equity of the complainants is this: They ought to have the legal title outstanding in the defendants upon payment of the purchase money and interest, bid at the probate sale, although thereby no right was conferred upon the purchaser, and although, further, the defendants have done nothing which, in good conscience, precluded them from setting up their legal rights. If, in any aspect of this view of the case, the complainants could ask for a surrender of the legal title, it could only be upon the condition of a payment or a tender of what is admitted to be due the defendants. But the rights of the parties stand thus.

The defendants have the legal title to one-sixth of the land. No act was done by their aunt, from whom they inherit, which in equity prevents them from maintaining their right. The complainants who represent the "Right of Way Company," cannot

ground an equity upon the idea that the purchase money for the one-sixth is a charge upon the land, and when satisfied, gives them a just claim to the legal title. That theory would be sound if the guardians' sale had been valid, and the purchase money for the defendants' interest remained unpaid. The final decree holds the land bound for one-third of the purchase money, being the interest which descended to Mrs. Noonan, in addition to the one-sixth which descended from the aunt, Margaret S. Collins. We have hereinbefore announced as our conclusion, that Mrs. Noonan, by her ratification of the sale, was precluded from asserting title. The decree in this respect is erroneous. We are also of opinion that the complainant has failed to show that he is the "real owner" of the remaining one-sixth in such sense as confers upon him a right to demand the aid the chancery court to annul the title of the defendants, or to restrain them from asserting it.

The decree is reversed, and cause remanded.