SUSAN GAINES ET AL. *v.* J. A. P. KENNEDY.

1. EJECTMENT. *Compensation for improvements. Bill in equity to enjoin judgment.*
   Under Code 1871, § 1557, the defendant in ejectment is not entitled to the value of " permanent, valuable, and not ornamental improvements " made on the land after the ejectment suit was brought. Nor can he maintain a bill in chancery to enjoin the execution of the judgment in ejectment, and thereby compel the plaintiff in ejectment to pay for such improvements before being let into.possession of the land.

2. RES ADJUDICATA. *Ejectment. Bill in chancery to enjoin judgment in ejectment. Improvements.*
   A judgment between the same parties for the same cause of action covers not only all that was proved in the first suit, but all that might have been established; and if, in an ejectment suit, the defendant omits to demand and establish his claim for the value of improvements put by him upon the land, he cannot be relieved in equity on a bill filed after judgment in the ejectment suit to enjoin that judgment.

3. PROBATE SALE. *Void. Equitable estoppel. Ejectment by heirs. Injunction.*
   A. died seised and possessed of lands; and, on petition of the guardians of the minor heirs of A., a decree for the sale of the lands was made by the Probate Court, and they were sold to H., from whom, by mesne conveyances, they passed to K. The probate sale being fatally defective, the heirs of A. brought ejectment against K. for the lands. *Held*, that K. could maintain a bill in equity to enjoin the execution of the judgment in ejectment until the heirs should pay the money paid for the land at the probate sale, on the allegation that the purchase-money had been paid over to the guardians of the minors, and received by the wards, on attaining majority, in their respective proportions.

4. EJECTMENT. *Valuable improvements. Code 1871, § 1557. Good faith.*
   The meaning of those words was announced at this term in the case of Cole v. Johnson.

5. VOID PROBATE SALE. *Rights of purchaser. Act of Feb.* 11, 1873 (*Acts* 1873, 41).
   The statute made two changes in the law as it existed before its passage, in regard to the rights of purchasers at void or voidable probate and chancery sales. First, a distribution of the money to the heirs or devisees creates the charge. If the money has been paid to the legal guardian of a minor, the requirement has been met; whereas, such payment (without the statute) would have no effect on the legal rights

of the ward, unless he had actually received the money, or had, after attaining majority, adopted an expenditure of it for his use. Second, the statute creates a charge on the land for reimbursement of the money; whereas, the existing law made the receipt of the money operate as an estoppel on the heir.

6. RETROACTIVE LEGISLATION. *Constitutionality of Acts* 1873, 41.
*Quære*, Whether the legislature can declare other and different consequences and rights ensuing from a defective probate sale, and things done under it, from those which the law existing at the time declared?

7. EQUITABLE ESTOPPEL. *Void probate sale. Subrogation or substitution.*
Where real estate has been sold for the payment of debts by an administrator who has so used the fund, the heir cannot recover the land, and hold it disincumbered of the intestate's debts which have been discharged by the money of the purchaser, although the probate sale was void. The land will be charged with the amount of the debts thus paid off, for the use of the purchaser.

8. PROBATE SALE. *Void. Equitable estoppel. Where heir has received purchase-money.*
If the sale was for distribution, and from fatal defects in the judicial proceedings the title of the heir has not been divested, yet the heir, if he has received the money, may thereby be placed under an equitable estoppel to reclaim the land. There may be circumstances in which the heir would not be concluded by receipt of the money, as if fraud or imposition were practised on him. But if the acceptance of the money should not, in a special case, work an estoppel, the money ought to be treated as a charge upon the land. And this is the law, independent of the act of 1873.

9. INFANT. *Election. Estoppel. Void probate sale.*
The act of the heir in receiving the purchase-money of a void probate sale is in the nature of an election whether he will take the money or the land, and is only effectual against him as an estoppel after he has attained majority.

10. SAME. *Who may take advantage of the estoppel against the heir.*
In the case of a void probate sale, if the heir is estopped to recover the land, by having received the purchase-money paid by the purchaser to the guardian, the estoppel may be availed of to restrain the heir from executing a judgment in ejectment for the land by any party claiming under the original vendee.

APPEAL from the Chancery Court of Calhoun County.

Hon. W. D. FRAZEE, Chancellor.

This was a bill in chancery, filed by J. A. P. Kennedy against the heirs-at-law of Alexander Armstrong, to enjoin the execution of a judgment in ejectment, which said heirs

had recovered against the complainant. The case comes to this court from a decree overruling a demurrer to the bill. The allegations of the bill are very fully stated in the opinion of the court.

*Martin* and *Bates*, for the appellants.

1. The matters set forth in the bill were fully adjudicated by the Circuit Court, in the rendition of the judgment which the bill seeks to enjoin; or, if not, under the pleadings in that suit, could and should have been adjudicated; and the defendant is estopped from filing this bill in chancery, after the rendition of that judgment at law. *Thomas* v. *Phillips*, 4 S. & M. 358, 423.

2. If Kennedy had outstanding equities which the law court could not adjudicate in the ejectment suit, the proper time for him to have invoked the aid of equity was before the final trial and judgment in the law court. *Thomas* v. *Phillips*, *ubi supra*; 2 Story Eq. Jur. § 887.

3. Kennedy having put all the improvements on the land which he ever put on it, pending the ejectment suit, and after he was a party thereto, is not entitled in law or equity to obtain payment for said improvements. Code 1871, § 1557; Acts 1873, 41.

4. The purchase-money is not brought into the hands of the heirs by the allegations of the bill, and, therefore, there was no ground to enjoin the judgment in the ejectment suit. *Wilie* v. *Brooks*, 45 Miss. 542; *Douglass* v. *Bennett*, 51 Miss. 680.

5. Under the decision in *Learned* v. *Corley*, 43 Miss. 687, 693, the complainant had full notice of the defects in his title from the probate records. He was not a *bona fide* purchaser. He had the notice before he purchased the land, and before he made the improvements. His entry on the land was therefore tortious, and he put the improvements on the land at his peril.

*Roane* and *Roane*, for the appellee.

*Lamar* and *Mayes*, on the same side.

1. The matters set up in the bill are not *res adjudicata*. Bouvier's Law Dictionary, title "Res Adjudicata;" Freeman on Judgments, § 252; *Agnew* v. *McElroy*, 10 S. & M. 555.

(1.) The claim for refunding the purchase-money is a pure equity, and could not have been litigated in the ejectment

suit. *Brown* v. *West*, 7 How. 181; *Thompson* v. *Wheatley*, 5 S. & M. 505; *Heard* v. *Baird*, 40 Miss. 794. The act of 1873 (Acts 1873, 41) does not confer on the Circuit Court jurisdiction of the lien therein conferred.

(2.) The claim for improvements subsequent to action brought could not have been determined in the action of ejectment.

(3.) As to improvements made before suit brought, the rule of estimation at law is the value of the improvements, the rule in equity the enhanced value of the land. *Wilie* v. *Brooks*, 45 Miss. 551. *Res adjudicata* is therefore inapplicable to any of the claims set up in the bill; and if applicable to some, and not to others, the demurrer, being to the whole bill, should have been overruled. *Graves* v. *Hull*, 5 Cushman, 419; *Anding* v. *Davis*, 38 Miss. 574.

2. The bill detailing the facts which show that the complainant was a *bona fide* purchaser will not be vitiated by the mere omission of a formal allegation to that effect. *Parham* v. *Randolph*, 4 How. 435. As to what constitutes an innocent purchaser, the court says, in *Learned* v. *Corley*, 43 Miss. 708, that each case must stand on its own peculiar circumstances.

3. It was not proper to enjoin the suit at law before it ripened into judgment. *Thomas* v. *Phillips* only holds that the same cause of action cannot be twice set up. The matters set up in the bill, however, are not matters proper to have been tried in the ejectment suit.

SIMRALL, C. J., delivered the opinion of the court.

The defendant in ejectment "may plead the value of all permanent, valuable, and not ornamental improvements, made by the defendant, or any one under whom he claims, before notice of intention of the plaintiff to sue." "But no defendant shall be entitled to such compensation for improvements, unless he shall claim the premises under some contract or deed of purchase made or acquired in good faith."

What the statute intended by claim under contract or deed in good faith, was announced at this term, in the case of *Cole* v. *Johnson*, *ante*, 94.

It is disclosed in the bill that in the ejectment suit the defendant presented a claim for improvements, which was litigated and adjudicated in that suit.   The claim is now preferred for improvements made afterwards.  But the statute allows for those only which were made before notice of intention of the plaintiff to sue.

The defendant must act in good faith, believing that he has the title.   If he knows that he has no title, he cannot charge the real owner with improvements; nor can he, if informed that the plaintiff will sue, continue to improve, and be allowed for them, especially after suit has been brought.

The complainant does not prefer a just claim for improvements.   If he did not make his demand in the action at law coextensive with his right, he cannot be relieved in equity for what he omitted, for the opportunity was then offered to establish his full right, and that adjudication covers, not only all that was proved in that issue, but all that might have been established.   *Agnew* v. *McElroy*, 10 S. & M. 552 ; *Thomas* v. *Phillips*, 4 S. & M. 358.

But the complainant also claims that the land shall be charged with the price for which it sold under decree of the Probate Court in 1856.

The allegations are that Alexander Armstrong died seised of the land ; and that, on the petition of I. H. Thetford, guardian of some of the minor heirs, and R. D. Petrie, guardian of others, and Jasper Armstrong, an adult heir, praying that the land might be sold for distribution, the Probate Court decreed accordingly, and appointed said Thetford, Petrie, and Armstrong commissioners to make the sale.   The sale was made the 21st January, 1856, when A. G. Hallum became the purchaser for $5,100.

Afterwards, on 24th August, 1865, Hallum sold and conveyed to Kennedy and J. G. Kennedy, for $1,500.   In 1868, A. J. Kennedy bought the half interest of J. G. Kennedy for $1,600.   By mesne conveyances the entire property was purchased in 1871, and vested in the complainant.

The complainant further alleges that Hallum paid the price to the commissioners, and that Thetford and Petrie charged themselves, as guardians, with the money for their wards.   As

the wards severally may have attained majority or married off, as the complainant has been informed, they received from the guardians their distributive portion of the purchase-money.

The prayer is for an injunction to stay execution of the judgment in the ejectment suit, until the plaintiffs in that suit, defendants to the bill, shall pay the money paid by Hallum, purchaser at the probate sale, or their proper proportion of it, and also that they pay for the improvements.

A demurrer to the bill, and a motion to dissolve the injunction on the face of the bill, were heard at the same time, both of which were overruled, and the case was brought to this court.

The solicitor for the complainant seems to have framed the bill with special reference to the act of 11th February, 1873, pamphlet, 41. That act charges on the land the price paid by a purchaser, under probate or chancery decree, where the land has been sold for the payment of debts, or for distribution of the money, provided the money has been in good faith paid to the administrator, executor, or commissioner, and has been applied in good faith to payment of debts, or has been distributed among the heirs, legatees, or distributees, if such sales shall be void or voidable for any cause and the heirs, legatees, or distributees shall recover the land in ejectment from any person holding under such purchaser, by conveyance, descent, or otherwise. The complainant deraigns title from Hallum, the purchaser at the probate sale, and claims under this act that the price paid by Hallum may be imputed, for his benefit, as a charge on the land.

It will be noted that the act, by express words, applies alone to sales made before its passage. This sale was made seventeen years before it was enacted. The complainant brings his case within its requirements. But can the legislature declare other and different consequences and rights ensuing from the sale and things done under it, from those which the law existing at the time declared? We merely suggest the question, without discussing it, or intimating any opinion upon it.

It has been settled in our jurisprudence, on grounds most just and equitable, that where real estate has been sold

for the payment of debts by an administrator who has so used the fund, the heir cannot recover the land, and hold it disincumbered of the intestate's debts, which have been discharged by the money of the purchaser, but the land will be charged with the amount of the debts thus paid off for the use of the purchaser. *Short* v. *Porter*, 44 Miss. 533, 537; *Lee* v. *Gardiner*, 26 Miss. 521.

So, also, if the sale were for distribution, and, from fatal defects in the judicial proceedings, the title of the heir should not be divested; yet, if the heir has secured the money, he has accepted that which is in lieu of the land, and may be thereby placed under an equitable estoppel to reclaim the land. The sum of the doctrine on this subject is, that a right may be forfeited or lost by conduct which would make it fraudulent or against conscience to assert it. *Devereux* v. *Burgwyn*, 5 Ired. Eq. 351. His conscience would be affected by the transaction; and it would be inequitable, after taking the equivalent of the land, to recover that also.

There may be circumstances in which the heir might not be concluded by receipt of the money, as if there should be any imposition, deceit, or fraud practised upon him. But if the acceptance of the money should not, in a special case, work an estoppel, the money ought to be treated as a charge upon the land. Such is the state of the law, independent of the act of 1873. *Handy* v. *Noonan*, 51 Miss. 166, 169; *Wilie* v. *Brooks*, 45 Miss. 542. That statute makes the money paid to the administrator a charge on the land, for the use of any one who obtains title derivatively from him.

It will be observed that the statute made, or attempted to make, two changes in the law. The first is, that a distribution of the money to the heirs or devisees creates the charge. If the money has been paid to the legal guardian of a minor, the requirement has been met; whereas such payment (without the statute) would have no effect on the legal rights of the ward, unless he had actually received the money, or had, after attaining majority, adopted an expenditure of it for his use. The other change is, that the statute creates a charge on the land for reimbursement of the money, whereas the exist-

ing law made the receipt of the money operate as an estoppel on the heir; and, further, estoppel is only efficient after the heir has attained majority.

The act of the heir is very much in the nature of an election. It is personal, and the consequences are personal. Since the title was in him, and was attempted to be transferred by judicial proceedings, with respect to which he was passive, without capacity to assent or dissent, he cannot exercise his will and perform obligatory acts until majority. The guardian could not have made the election for him. If, therefore, the heir, after majority, can be put under estoppel, the effect of it may be claimed by any party claiming under the original vendee. *Lee* v. *Gardiner, ubi supra; Kempe* v. *Pintard,* 32 Miss. 324; *Wilie* v. *Brooks, ubi supra.*

The complainant distinctly avers that, as the several heirs, wards of Thetford and Petrie, reached majority or married off, their respective portions of the purchase-money were paid to them by their guardians. The case stated in the bill is within the act of 1873, and also within the principle of equity, independent of the statute. We are not, therefore, obliged to consider the very grave question of the competency of the legislature to pass the statute of 1873, applicable to sales made before its passage. That question was not mooted in *Cole* v. *Johnson, ante,* 94, nor has it been argued by counsel in this case. We are not inclined to encounter problems of that sort, and decide them, without full argument.

Counsel for the appellants insist that the matters of the bill could have been, and therefore ought to have been, preferred and litigated in the suit at law. Independently of the act of 1873, the matter of estoppel is not by record or deed of which courts of law take notice, but by acts *in pais,* which bind the conscience and make it inequitable for the defendant to press the legal advantage which he has. It does not divest the heirs of their title, but rather restrains them from using it to the prejudice of the complainant.

So in the other aspect of the bill, if it shall be determined that the complainant has a charge on the land under the statute of 1873, he may have relief in chancery, for the charge is

not a title to the land : it is no more than an incumbrance on the property against the heir.

Although the complainant has shown no right to relief on account of improvements put on the property, on the other grounds he may be redressed.

The demurrer was properly overruled.